FILED

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

00 MAR -6  AM 9:19

U.S. DISTRICT COURT
N.D. OF ALABAMA

MARTHA SELF,                        )
                                    )
          Plaintiff,                )
                                    )
v.                                  ) CIVIL ACTION NO. 98-JEO-2581-S
                                    )
BELLSOUTH MOBILITY, INC.,           )
a corporation,                      )
                                    )
          Defendant.                )

ENTERED

MAR 6 2000

## MEMORANDUM OPINION

Before the court is the motion of defendant BellSouth Mobility, Inc. ("BSM" or "the

defendant"), to stay this action pursuant to the doctrine of primary jurisdiction to allow the

Federal Communications Commission ("FCC") to decide issues raised by the defendant in its

"Petition for Reconsideration and Clarification" filed with the FCC on December 6, 1999. (Doc.

51). The motion is opposed by plaintiff Martha Self ("Self" or "the plaintiff"). (Doc. 59). Also

before the court is the plaintiff's motion for leave to file a "Fourth Amended Complaint" (doc.

55) and the plaintiff's motion to compel the defendant to provide a corporate representative for

deposition (doc. 57). A hearing on the motions was conducted on February 16, 2000. Upon

consideration, the motion to stay and for leave to amend are due to be granted and the motion to

compel is due to be denied without prejudice.

## I. BACKGROUND

Providing universal telecommunications service in the United States is a goal that has

been entrusted to the FCC since 1934. It was a part of the Communications Act of 1934, which

created the agency. *See* 47 U.S.C. § 151 (as amended). *See also Alenco Communications v.*

74

*Federal Communication Commission*, ___ F.3d ___, 2000 WL 60255, *1 (5th Cir. 2000).

Congress expanded the FCC's involvement in the universal service fee program through the

Telecommunications Act of 1996.  The FCC administers the program through extensive

regulations and orders issued pursuant to its authority.  For purposes of the pending motion, it is

not necessary to enter into a detailed explanation of the program.  Suffice it to say that the FCC

uses two funds to achieve its goal of providing greater telecommunication services in the United

States.  The first fund, the "high-cost" service and "low-income" subscribers fund ("high-cost,

low-income fund"), which is intended to subsidize the expensive, unprofitable rural customers,

draws its funding from interstate and international revenues.  The second fund, the "schools and

libraries" fund ("schools and libraries fund"), which, as the title implies, supports schools,

libraries, and health care facilities, draws its funding from intrastate, interstate, and international

revenues of interstate telecommunications services.  Under the 1996 Act, providers of

"commercial mobile radio service" ("CMRS"), such as BSM were required to contribute to the

universal service fee program.  The FCC determines the amount due from the various carriers

and requires each to make monthly payments.  *See* 47 C.F.R. Part 54.

In a December 30, 1997, order, the FCC stated, among other things, that CMRS carriers

are permitted to recover universal service charges from both interstate and intrastate customers.

(Fourth Order on Reconsideration in Docket No. 96-45, Report and Order in CC Docket Nos. 96-

45, 96-262, 94-1, 91-213, 95-72, ¶ 309 ("Fourth Reconsideration Order").  Premised on this

order, the defendant, as well as other CMRS providers, recovered their universal service fees

from interstate and intrastate customers.

On July 30, 1999, the Fifth Circuit Court of Appeals decided *Texas Office of Public*

2

*Utility Counsel v. Federal Communications Commission,* 183 F.3d 393 (5th Cir. 1999)("*Texas*

*Counsel*"). Therein the court held, in part, that the FCC had "exceeded its jurisdictional

authority when it assessed contributions for § 254(h) 'schools and libraries' programs based on

the combined intrastate and interstate revenues of interstate telecommunications providers and

when it asserted its jurisdictional authority to do the same on behalf of high-cost support." *Texas*

*Counsel*, 183 F.3d at 409.  The court's mandate was effective November 1, 1999.  Petitions for

certiorari in that case were filed on December 23, 1999, and January 26, 2000.

  The FCC responded to the *Texas Counsel* decision by issuing an order prospectively

eliminating universal fees based on intrastate revenues.  The effective date is November 1, 1999.

The order did not address the issue of recovering the universal service fees from intrastate

customers.

  BellSouth Corporation, the parent company of BSM, filed on December 6, 1999, a

petition with the FCC seeking reconsideration and clarification of certain matters raised by the

decision in *Texas Counsel*.  (Doc. 53, Ex. C).  Specifically, BSM seeks direction from the FCC

concerning whether it (BSM) may retain the universal fees assessed on intrastate revenues prior

to the *Texas Counsel* ruling and whether it may continue to recover the costs of the universal fees

through charges on their intrastate and interstate subscriber-customers.  The petition is still

pending.

  The defendant filed its motion to stay the present matter on January 12, 2000.  (Doc. 51).

BSM asserts that this court should stay the matter to allow the FCC to further review the

retroactivity and recovery issues raised by the *Texas Counsel* decision.  (*Id*., p. 4).

## II. DISCUSSION

The plaintiff presents five state law claims against the defendant in connection with its inclusion of a "universal service charge" on her monthly cellular telephone bill. The claims include: breach of contract, deceit and misrepresentation, negligence, unjust enrichment, and fraudulent suppression. The parties disagree on fundamental issues involved in this dispute that relate to matters raised by *Texas Counsel* and which are presently before the FCC. They disagree, among other things, as to how the payments to the program are to be calculated, *e.g.* using interstate and/or intrastate revenues, how BSM may recover its payments to the program, and whether the sums paid by the subscriber-customers should be calculated on a pro rata or flat-rate basis. According to the defendant, the issues involve matters particularly within the province of the FCC, warranting a stay of this matter under the doctrine of primary jurisdiction.

The primary jurisdiction doctrine "has evolved as a means of reconciling the functions of administrative agencies with the judicial function of the courts." *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 532 F.2d 412, 416 (5th Cir. 1976), *cert. denied*, 429 U.S. 1094 (1977).[1] The doctrine "comes into play whenever enforcement of [a] claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body. . . ." *United States v. Western Pacific Railroad Co.*, 352 U.S. 59, 63, 77 S. Ct. 161, 1 L. Ed. 2d 126 (1956). *See also United States v. Philadelphia Nat'l Bank*, 374 U.S. 321, 353, 83 S. Ct. 1715, 10 L. Ed. 2d 915 (1963)(The doctrine applies when "protection of the integrity of a regulatory scheme dictates preliminary resort to the agency

---

[1] All decisions of the former Fifth Circuit handed down before the close of business on September 30, 1981, are binding precedent in this circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

4

which administers the scheme."). The Supreme Court in *Western Pacific Railroad Co.,* stated:

> No fixed formula exists for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation. These reasons and purposes have often been given expression by this Court. In the earlier cases emphasis was laid on the desirable uniformity which would obtain if initially a specialized agency passed on certain types of administrative questions. *See Texas & Pacific R. Co. v. Abilene Cotton Oil Co.,* 204 U.S. 426, 27 S. Ct. 350, 51 L. Ed. 553. More recently the expert and specialized knowledge of the agencies involved has been particularly stressed. *See Far East Conference v. United States,* 342 U.S. 570, 72 S. Ct. 492, 96 L. Ed. 576. The two factors are part of the same principle, "now firmly established, that in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over. This is so even though the facts after they have been appraised by specialized competence serve as a premise for legal consequences to be judicially defined. Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure." *Id.,* 342 U.S. at 574-575, 72 S. Ct. at 494.

*Western Pacific Railroad Co.,* 352 U.S. at 64-65.  A court should refer a matter to an agency only where there is a "'strong possibility' that the agency decision would end the dispute" or at least serve as a "'material aid in ultimately deciding'" the issue before the court. *Sprint Corp. v. Evans,* 846 F. Supp. 1497, 1505 (M.D. Ala. 1994)(quoting *Carter v. AT&T,* 365 F.2d 486, 499 (5th Cir. 1966) and *Ricci v. Chicago Merc. Exch.,* 409 U.S. 289, 305, 93 S. Ct. 573, 582, 34 L. Ed. 2d 525 (1973).

The defendant asserts that the stay is necessary to ensure "uniform and expert administration" of the universal service program by the FCC. (Doc. 52, p. 15, *citing Western Pacific Railroad Co.,* 352 U.S. at 65). It further asserts that the pendency of their motion for

5

reconsideration and clarification also warrants the invocation of the primary jurisdiction doctrine. (Doc. 52, p. 16).

In determining whether to exercise its discretion, the court first must be satisfied that the particular agency has jurisdiction over the issue presented. *Fulton Cogeneration Associates v. Niagara Mohawk Power Corp.*, 84 F.3d 91, 97 (2nd Cir. 1996). If there is appropriate jurisdiction, the court must examine a number of factors, including the degree of the agency's discretion over the matter, the relative expertise of the agency and the courts in making the required determinations, the need for uniformity, the clarity of any pre-existing agency pronouncements, and the status of any proceedings on-going before the agency. *See, e.g., Mississippi Power Light,* 532 F.2d at 418-21; *National Comm. Ass'n v. AT & T*, 46 F.3d 220, 222 (2nd Cir. 1995). *Cf. United States v. General Dynamics Corp.*, 828 F.2d 1356, 1362 (9th Cir. 1987)("There are four factors uniformly present in cases where the doctrine properly is invoked: (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration."). Ultimately, "the court must always balance the benefits of seeking the agency's aid with the need to resolve disputes fairly yet as expeditiously as possible." *Mississippi Power & Light*, 532 F.2d at 420.

Turning to the threshold issue, the jurisdiction of the FCC to address the matters presented, the plaintiff asserts that the FCC does not have "jurisdiction over intrastate rates which would necessarily include the *recovery* of intrastate contributions from intrastate rates." (Doc. 59, p. 2)(emphasis in original). Self cites *Texas Counsel* in support of her position. There

6

is no question that the Fifth Circuit Court of Appeals found, in part, that the FCC exceeded its jurisdictional authority in certain aspects concerning the use of intrastate revenues in calculating the universal service fee contributions for the schools and libraries programs. This court, however, does not give that decision the all encompassing breadth that the plaintiff suggests. Further, it is the courts of appeals that have "exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of all final orders of the [FCC]." 28 U.S.C. § 2342(1). Although the plaintiff brings state claims against the defendant, resolution of those matters will necessarily involve a determination of the validity of certain orders and actions of the FCC. The court finds that for purposes of this motion, the FCC has jurisdiction to address the pertinent issues.

Upon a close examination of the issues presented herein, the court is absolutely convinced that many of the issues raised herein are appropriately left for resolution by the FCC, which possesses much greater experience in the area of the universal service program. Additionally, staying this matter to allow the FCC to reconsider, clarify, or revise its orders simply makes more sense than diving into the present issues without the direction that hopefully will be forthcoming from the FCC or the United States Supreme Court in the review of the *Texas Counsel* decision. Even if certiorari is denied by the Supreme Court and BSM's petition for reconsideration and clarification is deemed untimely, the court does not see sufficient deleterious impact on the pending litigation to warrant a denial of the motion for a stay.

## III. CONCLUSION

Premised on the foregoing, the defendant's motion to stay is due to be granted. The court further finds that the plaintiff's motion for leave to file the "Fourth Amended Complaint" is due

7

to be granted and her motion to compel is due to be denied without prejudice.  Accordingly, this

matter will be stayed pending a decision by the Federal Communications Commission on the

defendant's petition for reconsideration and for clarification and a ruling in the application for

certiorari.

      **DONE,** this the _____ day of March, 2000.

                                        JOHN E. OTT
                                        UNITED STATES MAGISTRATE JUDGE