# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| MARTHA SELF, )  |  |
| )  |  |
| Plaintiff, )  |  |
| )  |  |
| v. ) | 2:98-cv-02581-JEO |
| )  |  |
| BELLSOUTH MOBILITY, INC., )  |  |
| a corporation, )  |  |
| )  |  |
| Defendant and Third-Party )  |  |
| Plaintiff, )  |  |
| )  |  |
| v. )  |  |
| )  |  |
| FEDERAL COMMUNICATIONS )  |  |
| COMMISSION and UNIVERSAL )  |  |
| SERVICE ADMINISTRATIVE )  |  |
| COMPANY, )  |  |
| )  |  |
| Third-Party Defendants. )  |  |

## MEMORANDUM OPINION

Before the court are the motions of third-party defendants Federal Communications Commission ("FCC") (doc. 122) and Universal Services Administrative Company ("USAC") (doc. 120) to dismiss the third-party complaint of defendant/third-party plaintiff Cingular Wireless, LLC, for itself and as successor in interest to BellSouth Mobility, LLC, BellSouth Mobility, Inc., and American Cellular Communications Corporation (collectively "Cingular" and "third-party plaintiff") (doc. 125). The motions are opposed by Cingular.[1] (Doc. 126). Upon consideration, the court finds that the motions to dismiss are due to be granted without prejudice.

---

[1] In its opposition, Cingular references its amended third-party complaint (doc. 125), which it filed on the same day as its opposition. In their replies, both the FCC and USAC address Cingular's amendment so the court has treated their motions to dismiss as motions to dismiss the amended complaint.

**BACKGROUND**

In the underlying litigation, the plaintiff (for herself and as a putative class representative) alleges that Cingular improperly recovered its contributions to the Universal Service Fund ("USF") from its customers in violation of the Federal Communications Act ("FCA"). Cingular answered the complaint, asserting, among other things, that its actions in collecting the fee were permitted by FCC regulations and were necessary to recover Cingular's USF contributions.

Under the Telecommunications Act of 1996, providers of "commercial mobile radio service" ("CMRS"), such as Cingular, were required to contribute to a program to offset the cost of providing cellular service to rural customers. The amount due from each CMRS provider in order to promote universal service was determined by the FCC and collected on a monthly basis from the CMRS carriers by the USAC, which was designated by the FCC as the "administrator" of the program. *See* 47 C.F.R. Part 54. Under this newly expanded program, the FCC set up two different funds to achieve its goal of universal service. Each was funded differently. The first fund was intended to subsidize the expensive and unprofitable rural customers and drew its funding from interstate and international revenues of the CMRS providers. *Id*. The second fund was intended to support schools, libraries, and health care facilities and drew its funding from intrastate as well as interstate and international revenues of the CMRS providers. *Id.*

In a December 30, 1997 order, the FCC stated, among other things, that CMRS carriers were permitted to recover the universal service charges that they were required to pay to the FCC from both their interstate and intrastate customers. *See* Fourth Order on Reconsideration in Docket No. 96-45, Report and Order in CC Docket Nos. 96-45, 96-262, 94-1, 91-213, 95-72, ¶

309 ("Fourth Reconsideration Order").  The order stated that CMRS carriers were *permitted*, but not required, to recover the universal service charges from their customers.  *Id*.  Premised on this order, the defendant, as well as other CMRS providers, recovered their universal service fees from both its interstate and intrastate customers.

On July 30, 1999, the Fifth Circuit Court of Appeals decided *Texas Office of Public Utility Counsel v. Federal Communications Commission,* 183 F.3d 393 (5th Cir. 1999)("*Texas Office*").  Therein the court held, in part, that the FCC had "exceeded its jurisdictional authority when it assessed contributions for § 254(h) 'schools and libraries' programs based on the combined intrastate and interstate revenues of interstate telecommunications providers and when it asserted its jurisdictional authority to do the same on behalf of high-cost support."  *Texas Office*, 183 F.3d at 409.  The court's mandate was made effective November 1, 1999.

The FCC responded to the *Texas Office* decision by issuing an order prospectively eliminating universal fees based on intrastate revenues effective November 1, 1999.  The FCC order merely stated that the FCC would not base the amount of universal service fees collected by the FCC from the CMRS carriers on the combined interstate and intrastate revenues of the CMRS carrier.  The order did not address whether this newly defined (and lower) sum that the CMRS carriers were to pay to the FCC could be recovered by the CMRS carriers from both their interstate and intrastate customers, or whether it could only be recovered by the CMRS carriers from their interstate customers.

BellSouth Corporation, the parent company of BellSouth Mobility (predecessor of Cingular) filed a petition with the FCC on December 6, 1999, seeking reconsideration and clarification of certain matters raised by the decision in *Texas Office*.  (Doc. 53, Ex. C).

3

Specifically, direction was sought from the FCC concerning whether it may retain the universal fees recovered from its customers on intrastate revenues prior to the *Texas Counsel* decision and whether it may continue to recover the allowable costs of the universal fees through charges on their intrastate and interstate subscriber-customers. Upon motion by the defendant, this action was stayed pending FCC ruling on BellSouth's petition.

On August 22, 2005, the FCC released its ruling on BellSouth's petition. *Order on Petition for Reconsideration and Clarification of the Fifth Circuit Remand Order of BellSouth Corporation*, CC Docket 96-45, 96-262, 2005 WL 2007108 (F.C.C.). The FCC held that CMRS providers may recover their universal service contributions through rates charged for all of their services and that the FCC's decision in the Fifth Circuit Remand Order applied the Fifth Circuit decision prospectively beginning November 1, 1999. *Id*. at 1. The Commission declined to address BellSouth's request for reconsideration of the Commission's decision so as to implement the Fifth Circuit's decision on a prospective basis or BellSouth's request for refund of its universal service fund contributions based on intrastate revenues, instead choosing to address the matter in a subsequent order. *Id*. at n.16.

Shortly after the issuance of the Commission's ruling and the subsequent lifting of this Court's Order to Stay Proceedings in this case, Cingular filed its third-party complaint against USAC and the FCC in this matter. (Doc. 105). After USAC and the FCC responded with their motions to dismiss (doc. 120 & 122), Cingular filed an amended third-party complaint along with a memorandum opposing the motions to dismiss (doc. 125 & 126). USAC and the FCC both subsequently filed reply briefs. (Doc. 129 & 130).

In Cingular's third-party complaint, it alleges that "Cingular has acted in accordance with

the FCC's and USAC's rules and regulations in making contributions to the USF and in recovering its USF contributions from customers." (Doc. 105 at ¶ 10). Cingular further asserts that the FCC and/or USAC will be liable to it for some or all of any judgment that the plaintiff might recover from it. (Doc. 105 at ¶¶ 15, 25). In the amended third-party complaint, Cingular also asserts that:

> The Plaintiff has made averments of the Federal Communications Act and the 1996 Act that if established would also establish that Cingular's USF contributions were wrongfully exacted by USAC or the FCC or both. Accordingly, Cingular would be entitled to restitution from USAC or the FCC or both of the amounts wrongfully exacted.

(Doc. 125 at ¶ 17).

> The Plaintiff has made averments with respect to the response of USAC and the FCC to the *Texas Office* decision that if established would also establish that Cingular's USF contributions were wrongfully exacted by USAC or the FCC or both. Accordingly, Cingular would be entitled to restitution from USAC or the FCC or both of the amounts wrongfully exacted.

(Doc. 125 at ¶ 28).

## MOTION TO DISMISS STANDARD

Because the defendants challenge the court's jurisdiction to hear the third-party claims (FED. R. CIV. P. 12(b)(1)), the standard of review is as follows:

> Attacks on subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) come in two forms. "Facial attacks" on the complaint "require[ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.), *cert. denied*, 449 U.S. 953, 101 S. Ct. 358, 66 L. Ed. 2d 217 (1980) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). "Factual attacks," on the other hand, challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings,

> such as testimony and affidavits, are considered." *Id.*
>
> These two forms of attack differ substantially. On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion - the court must consider the allegations of the complaint to be true. *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir.), *cert. denied*, 454 U.S. 897, 102 S. Ct. 396, 70 L. Ed. 2d 212 (1981). But when the attack is factual, the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction - its very power to hear the case - there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. *Id.* at 412-13 (quoting *Mortensen*, 549 F.2d at 891).

*Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990) (emphasis added). Explained another way,

> a Rule 12(b)(1) motion can serve either purpose. If it simply challenges the sufficiency of the allegations of subject matter jurisdiction, then the pleading's contents are taken as true for purposes of the motion. However, if it challenges the actual existence of subject matter jurisdiction, then the pleading's allegations are merely evidence on the issue. Since the party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction regardless of the pleading's allegations, the courts have held that the pleader must establish jurisdiction with evidence from other sources, such as affidavits or depositions. The general rule, therefore, is that a pleading's allegations of jurisdiction are taken as true unless denied or controverted by the movant. Thus, if the movant fails to contradict the pleader's allegation of subject matter jurisdiction in his motion to dismiss under Rule 12(b)(1), then he is presumed to be challenging the pleading's sufficiency under Rule 8(a)(1), and the allegations of the pleading pertaining to jurisdiction are taken as true. But if the movant, either in his motion or in any supporting materials, denies or controverts the pleader's allegations of jurisdiction, then he is deemed to be challenging the actual existence of subject matter jurisdiction, and the allegations of the

> complaint are not controlling.
>
> The court will not accept as true allegations that are contradicted by facts that can be judicially noticed or by other allegations or exhibits attached to or incorporated in the pleading. On the other hand, the allegations of the pleading will be supplemented by any relevant matter that can be judicially noticed or by the contents of any exhibits attached to the pleading or any matter validly incorporated by reference.
>
> 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1363 (2d e.1990).

*Anderson v. United States*, 245 F. Supp. 2d 1217, 1220-21 (M.D. Fla. 2002).

In reviewing a motion to dismiss premised on a failure to state a claim (FED. R. CIV. P. 12(b)(6)), the court "must accept the allegations set forth in the complaint as true. *See United States v. Pemco Aeroplex, Inc.*, 195 F.3d 1234, 1236 (11th Cir. 1999) (en banc)." *Lotierzo v. Woman's World Medical Center, Inc.*, 278 F.3d 1180, 1182 (11th Cir. 2002). Similarly, it must construe all the factual allegations in the light most favorable to the plaintiff. *Sofarelli v. Pinellas County*, 931 F.2d 718, 721 (11th Cir. 1991) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1947)). Such a motion may be granted only "when the movant demonstrates 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957)." *Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1387 (11th Cir.), *cert. denied*, 525 U.S. 1000, 119 S. Ct. 509, 142 L. Ed. 2d 422 (1998).

**DISCUSSION**[2]

**Subject Matter Jurisdiction**

In their motions to dismiss, both the FCC and USAC assert that this court lacks subject matter jurisdiction over Cingular's claims. The court will address both motions below.

**The FCC and Jurisdiction of the Courts of Appeals**

Prior to the amendment of the third-party complaint, the FCC argued that it had not waived sovereign immunity with respect to the damages sought in the third-party complaint. (Doc. 123 at 7-12). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *JBP Acquisitions, LP v. United States ex rel. FDIC*, 224 F.3d 1260, 1263 (11th Cir. 2000) (quoting *FDIC v. Meyer*, 510 U.S. 471, 475, 114 S. Ct. 996, 127 L. Ed. 2d 308 (1994). A waiver of sovereign immunity "must be unequivocally expressed in statutory text," and "will be strictly construed . . . in favor of the sovereign." *United States v. Aisenberg*, 358 F.3d 1327, 1342 (11th Cir. 2004), *cert. denied*, 543 U.S. 868, 125 S. Ct. 276, 160 L. Ed. 2d 115 (2004) (quoting *Lane v. Pena*, 518 U.S. 187, 192, 116 S. Ct. 2092, 2096, 135 L. Ed. 2d 486 (1996)). Specifically, "a plaintiff must have a substantive right to the relief sought and an explicit Congressional consent authorizing such relief in order to maintain an action against the United States." *Swank, Inc. v. Carnes*, 856 F.2d 1481, 1483 (11th Cir. 1998) (quoting *Keesee v. Orr*, 816 F.2d 545, 547 (10th Cir. 1987)). Thus, a plaintiff may not rely on the general federal jurisdiction embodied to establish district court jurisdiction, but must instead identify a specific

---

[2] As stated previously, when Cingular responded to the USAC's and the FCC's motions to dismiss, it also filed an amended third-party complaint. Therefore, some of the points made in the original motions to dismiss became moot with the amended third-party complaint. For resolution of the motions to dismiss, the court deems the memorandums in support of the motions to dismiss moot (except to the extent that an argument may have been dealt with more extensively in the original motion and referenced by the replies) and relies upon Cingular's response and the FCC's and USAC's replies to that response. The court will not address issues in the original memorandums that were made superfluous by the amended third-party complaint.

statutory provision waiving the government's immunity from suit.  *Garcia v. United States*, 666 F.2d 960, 966 (5th Cir.), *cert. denied*, 459 U.S. 832, 103 S. Ct. 73, 74 L. Ed. 2d 72 (1982).

Cingular asserts that its claim for restitution may be brought pursuant to 28 U.S.C. § 1346(a) (the "Tucker Act"), which provides that:

> (a) The district courts shall have original jurisdiction . . . of:
>
> . . .
>
> (2) Any other civil action or claim against the United States, not exceeding $10,000 in amount,[3] founded either upon the Constitution, or any act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort . . . .

28 U.S.C. § 1346(a)(2).  Among those claims that may be brought pursuant to § 1346(a)(2) are "those in which the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum."  *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1572-73 (Fed. Cir. 1996) (quoting *Eastport S.S. Corp. v. United States*, 178 Ct. Cl. 599, 605, 372 F.2d 1002, 1007 (1967)).

The FCC retorts, however, that a Tucker Act claim for restitution of monies paid to the Government must be based on a finding that the Government acted "illegally" in requiring the payment.  *See Aerolineas Argentinas*, 77 F.3d at 1573 (under the Tucker Act, the court "determine[s] whether the charges were illegally exacted by the government").  (Doc. 130 at p. 4).  Cingular asserts in the third-party complaint that Self, the original plaintiff in this action, has presented allegations "that if established would also establish that Cingular's USF contributions

---

[3] Cingular asserts that the claims are within the jurisdictional amount because under the Tucker Act, claims of individuals in a class action are not aggregated for purposes of district court jurisdiction.  *See March v. United States*, 506 F.2d 1306, 1309 n.1 (D.C. Cir. 1974).

9

were wrongfully exacted by USAC or the FCC or both." (Doc. 125 at ¶¶ 17 & 26). Further, Cingular asserts that it would therefore be entitled to restitution from the USAC or the FCC or both for any funds wrongfully exacted. *Id*.

The FCC argues, however, that Cingular's claims, as amended, are exclusively within the jurisdiction of the courts of appeals. (Doc. 130 at 4-8). This court agrees. Cingular's complaint challenges the FCC's USF regulations and that challenge is within the exclusive jurisdiction of the courts of appeals. The relevant portion of the Communications Act provides as follows:

> Any proceeding to enjoin, set aside, annul, or suspend any order of the Commission under this chapter (except those appealable under subsection (b) of this section) shall be brought as provided by and in the manner prescribed in chapter 158 of Title 28.

47 U.S.C. § 402(a). Additionally, the Hobbs Act provides:

> The court of appeals (other than the United States Court of Appeals for the Federal Circuit) has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of - -
>
> (1)   all final orders of the Federal Communications Commission made reviewable by section 402(a) of title 47.

28 U.S.C. § 2342(1).

While Cingular attempts to circumvent the issue of the propriety of the FCC's order in an effort to establish its third-party claims, it simply has not set forth any way that the FCC would be liable to Cingular for its collection of fees from its customers that is not related to the FCC's order. Cingular asserts as follows:

> Ms. Self's complaint on its face does not challenge any final orders of the FCC. The Third-Party Complaint, being derivative of Ms. Self's claims, does not challenge a final order of the FCC. To the contrary, in order to establish its claim for restitution against USAC, Cingular must establish that it complied with FCC orders in assessing Ms. Self and paying over contributions to USAC.

(Doc. 126 at 7). At this stage in the litigation, the court cannot foresee a claim that Self could establish against Cingular for which the FCC and/or USAC would be liable to Cingular, that does not involve an FCC order.[4] It remains to be seen whether Self can establish a claim against Cingular independent of the FCC's order. However, if she does, the court cannot see how the FCC would be liable to Cingular for a claim that does not involve it.

Moreover, should Self establish a claim against Cingular for which Cingular is owed restitution from the FCC and/or USAC, the proper procedure is for Cingular to file a refund application with USAC. *See* 47 C.F.R. § 54.719(b). If Cingular is not satisfied with the response from USAC, then Cingular may apply for review by the FCC. *See* 47 C.F.R. § 54.719(c). Ultimately, any final decision by the FCC denying the requested relief would be reviewable in the courts of appeals under the sections cited above. However, the administrative procedures are a prerequisite to judicial review of any FCC regulatory action. *See*, *e.g.*, *Int'l Telecard Ass'n v. FCC*, 166 F.3d 387 (D.C. Cir. 1999) (dismissing appeal as premature because the Commission had not yet ruled on the pending application for review); *Tipperary v. United States*, 11 Cl. Ct. 572, 577 (Cl. Ct. 1987) (finding "no excuse for plaintiffs' failure to pursue the administrative remedy that was available" (under the Economic Stabilization Act and the Emergency Petroleum Allocation Act) and finding that failure precluded judicial review). Where Congress provides "a specific and comprehensive scheme for administrative and judicial review . . . Tucker Act jurisdiction over the subject matter covered by the scheme is preempted." *Folden v. United States*, 379 F.3d 1344 (Fed. Cir. 2004). As this court has stated previously, "[a]lthough the

---

[4]In fact, Cingular asserts in its response that "ultimately Ms. Self must challenge FCC orders in order to advance her claims because Cingular can point to an order as a defense to every action that Ms. Self challenges." (Doc. 126 at 7). However, it further asserts "that is a separate issue from whether or not Cingular can maintain a claim against the Third-Party defendants." *Id*.

plaintiff brings state claims against the defendant, resolution of those matters will necessarily involve a determination of the validity of certain orders and actions of the FCC." (Doc. 74 at 7). For the foregoing reasons, Cingular's amended third-party complaint is due to be dismissed as to the FCC.[5]

## The USAC

## Tucker Act Jurisdiction

USAC first argues that 28 U.S.C. § 1346(a)(2) does not provide this court with jurisdiction because it only grants it jurisdiction over non-tort monetary claims not exceeding $10,000 against the United States and because USAC is a private corporation. (Doc. 129 at 5-6). Cingular does not disagree that USAC is a private corporation, but contends that USAC is amenable to suit because it holds USF funds and "is vested with the power to recover . . . unpaid universal service assessments." (Doc. 126 at pp. 10-11 (quoting *In re Incomnet, Inc.*, 299 B.R. 574, 576 (BAP 9th Cir. 2003))). The court, however, finds the *In re Incomnet* case to be factually and legally dissimilar from the instant case such that it provides no assistance in

---

[5]The FCC also argues that "'conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal,'" (doc. 123 at p. 8 (citing *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003), *cert. denied*, 540 U.S. 1016 (2003))), and Cingular's third-party complaint fails to meet these standards. Cingular attempts to plead with particularity that its claims against the FCC and USAC are for "restitution for a wrongful exaction and alternatively against USAC, as a private party, for restitution." (Doc. 126 at p. 4). In so doing, Cingular argues that because the plaintiff is seeking restitution from it for monies wrongfully collected, it is seeking restitution of the government exaction wrongfully paid. *Id*. at p. 5. The problem with this argument is that the court has yet to determine whether it has jurisdiction over the plaintiff's claims challenging the USF program, and, if it does, whether the plaintiff has sufficiently stated a claim against Cingular. Although the plaintiff's claims are couched in terms of breach of contract, negligence, violation of the Federal Communications Act, unjust enrichment/money had and received/conversion, misrepresentation and suppression, and conspiracy, all of her claims necessarily revolve around the legality of the FCC's rules and regulations. In fact, in Cingular's amended third-party complaint, it states that:

> Cingular has denied the material averments of Self's Amended Complaint and has raised a number of affirmative defenses to her claims for relief. In particular, Cingular has answered that its assessment and recovery of contributions to the USF were in accordance with FCC and USAC rules and regulations and were necessary to recover Cingular's mandatory contributions to USAC for the USF.

(Doc. 125 at ¶ 16). Cingular's defense of Self's claims consistently comes back to the FCC's rules and regulations. The propriety of those rules and regulations must be adjudged in the appropriate forum, which is not this district court.

determining whether USAC is amenable to suit under the Tucker Act.[6]  Because the court finds that it lacks subject matter jurisdiction over Cingular's claim against USAC for alternative reasons, it declines to delve further into this issue at this juncture.

### Federal Question Subject Matter Jurisdiction

USAC next argues that the court lacks federal question subject matter jurisdiction over Cingular's third-party complaint.  USAC asserts that there are three problems with Cingular's argument that Self could establish a federal claim against Cingular for which USAC would be liable to Cingular "independent of FCC rules and regulations."  (Doc. 129 at 6-12).

First, USAC argues that Cingular's prior arguments to this court and its third-party complaint assert that Self's claims facially challenge the legality of FCC orders.  Specifically, USAC points out that in its brief seeking a stay of this action, Cingular represented the following to the court:

> In essence, the plaintiff asks the court to rewrite the FCC's cellular recovery rules based on *Texas Office*. . . .  [T]he plaintiff is asking the court to "enjoin, set aside, suspend . . . or determine the validity of [a] final order of the [FCC]," which is a matter within the exclusive jurisdiction of the courts of appeals.  *See* 28 U.S.C. § 2342; *see also* 47 U.S.C. § 402.  Unless and until stayed or overturned by a court of competent jurisdiction (*i.e.*, a court of appeals), FCC orders have the force and effect of law and are binding upon the parties and the courts.  An alternative court may not grant relief that would have the practical effect of suspending or setting aside a federal agency order.

(Doc. 129 at 7-8 (quoting Doc. 63 at 2)); and that Self "could only recover on her federal claims if the FCC's rules were overturned."  (Doc. 129 at 8 (quoting Doc. 52 at 3)).  Additionally, USAC argues that Self's amended third-party complaint furthers this argument through the

---

[6]The *Incomnet* case is a bankruptcy case in which the court had to discern whether USAC was a "conduit" or "transferee" for purposes of determining its treatment under a transfer order.

wrongful exaction claims.  Specifically, USAC points out that Cingular argues the following:

> [T]here is no question that Cingular will claim that it followed the FCC's rules and regulations in recovering its USF contributions from its customers and that Ms. Self cannot prevail because she is challenging those rules, which can only be challenged in the federal courts of appeals and on a timely basis.

(Doc. 129 at 8 (quoting Doc. 126 at 3)).

Second, USAC argues that the court has already held that resolution of Self's claims requires a determination of the legality of a FCC order.  (Doc. 129 at 9-10).  Finally, USAC argues that Cingular is judicially estopped from denying that its pleading invokes a challenge to the FCC's orders.  (Doc. 129 at 10-12).  In support of this argument, USAC asserts that "[j]udicial estoppel is intended to protect the integrity of the judicial system.  This doctrine . . . precludes a party from assuming a position in a legal proceeding inconsistent with one previously asserted when inconsistency would allow the party to play fast and loose with the courts."  (Doc. 129 at 10 (quoting *Chandler v. Samford Univ.*, 35 F. Supp. 2d 861, 863 (N.D. Ala. 1999))).  Judicial estoppel prevents a party "from deliberately changing positions according to the exigencies of the moment."  *Barger v. City of Cartersville*, 348 F.3d 1289, 1293 (11th Cir. 2003) (internal quotation marks and citations omitted).  The position that Cingular now takes is that

> Ms. Self may establish a federal claim independent of those [FCC] rules for return of her USF assessments . . . USAC's and the FCC's challenge to the Court's jurisdiction are based only on an assumption that Ms. Self cannot establish a federal claim that is independent of an FCC order.  It remains to be seen whether Ms. Self can do so.

(Doc. 129 at p. 11 (quoting Doc. 126 at 3)).  Not only is Cingular's current position contrary to the position it has taken previously, and thus, potentially judicially estopped; but, as set forth in discussion of the FCC's motion to dismiss, *supra,* Cingular's current position is simply a

14

hypothetical.  Cingular has offered nothing to establish that Self may be able to establish a claim for which the FCC and USAC may be liable to Cingular independent of the FCC's order.  The court wholly agrees with USAC in its assertion that

> [i]f Self recovers against Cingular under a federal claim "independent of" FCC rules and regulations, then it necessarily follows that USAC would have no liability to Cingular based on Plaintiff's recovery *because Plaintiff's recovery would not have had anything to do with an action by USAC* (*or the FCC*).

(Doc. 129 at 12 ) (emphasis in original).  As such, Cingular has failed to state a claim against USAC or the FCC in her amended third-party complaint, thereby warranting dismissal of Cingular's third-party action.[7]

## CONCLUSION

For the foregoing reasons, the court finds that Cingular's amended third-party complaint fails to state a claim against either the FCC or USAC.  As such, Cingular's amended third-party complaint is due to be dismissed without prejudice.[8]  A separate order will be entered contemporaneously herewith.

---

[7]USAC also argues that the court could not exercise supplemental jurisdiction over Cingular's third-party claims because supplemental jurisdiction is limited by 28 U.S.C. § 2342(1), which grants exclusive jurisdiction to hear appeals of FCC decisions to the court of appeals.  (Doc. 129 at pp. 15-17).  Because the court has already determined that Cingular's amended third-party complaint is due to be dismissed, it need not address supplemental jurisdiction at this juncture.  Should Self establish claims for which USAC and the FCC may be derivatively liable to Cingular, Cingular may assert its derivative claims at that time.

USAC's final argument, with which the court also agrees (see herein at pp. 11-12), is that Cingular has failed to exhaust its administrative remedies (see doc. 129 at 17-19).

[8]"[I]n the absence of subject matter jurisdiction there can be no preclusive findings or conclusions on the merits, and dismissal for lack of jurisdiction is without prejudice."  *Lewis v. United States*, 70 F.3d 597, 603 (Fed. Cir. 1995) (a jurisdictional dismissal is not *res judicata*); *Wheeler v. United States*, 11 F.3d 156, 159-60 (Fed. Cir. 1993); *Burnside-Ott Aviation Training Ctr., Inc. v. United States*, 985 F.2d 1574, 1580-81 (Fed. Cir. 1993).

**DONE**, this the 29th day of September, 2006.

$\overline{\phantom{XXXXXXXXXXXXXXXXXXXXXX}}$
**JOHN E. OTT**
United States Magistrate Judge