FILED
2011 Aug-03  PM 02:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| MARTHA SELF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:98-cv-02581-JEO |
| | ) | |
| BELLSOUTH MOBILITY, LLC, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

This case is before the court on defendant AT&T Mobility LLC's[1] ("AT&T" or "the

defendant") second motion for summary judgment.  (Doc. 169).  The issues have been fully

briefed by the parties.  Upon consideration, the court finds that the motion is due to be granted

and this case dismissed with prejudice.

## BACKGROUND

This case was removed to this court from the Circuit Court of Jefferson County on

October 9, 1998.  (Doc. 1).  Plaintiff Martha Self ("Self" or "the plaintiff") (for herself and as a

putative class representative) alleged in her initial complaint that Cingular (as the predecessor in

interest to AT&T) improperly recovered its contributions to the Universal Service Fund ("USF")

from its customers in violation of the Federal Communications Act ("FCA").  Cingular answered

the original complaint, asserting, among other things, that its actions in collecting the fee were

permitted by FCC regulations and were necessary to recover Cingular's USF contributions.

(Doc. 4).  After awaiting various rulings from the FCC that were relevant to the matters

---

[1] AT&T is the successor in interest to all previously named defendants: Cingular Wireless LLC, Bellsouth Mobility LLC, BellSouth Mobility, Inc., American Cellular Communications LLC, and American Cellular Communications Corp.

contained in this case, the parties filed cross motions for summary judgment in this court on December 14 and 15, 2006.  (Doc. 137 and Doc. 138).  The court entered its Memorandum Opinion on April 21, 2008, granting in part and denying in part the parties' motions.  (Doc. 156). Because the court's findings in that Opinion are not necessary to its analysis of the instant motion, they will not be set out herein.  However, in general terms, the court found that it only had jurisdiction to hear (1) the Communications Act claims that alleged AT&T assessed unreasonable and unjust fees and costs not in connection with the USF charge; (2) state law claims that AT&T obtained "monies above and beyond the amount authorized by FCC orders and the contract;" (3) claims that in the aggregate AT&T collected in excess of its contributions; (4) claims that AT&T earned interest on wrongfully collected monies; (5) claims that AT&T unjustly and unreasonably collected monies toward its administrative expenses or expenses unrelated to administration of the USF program; and (6) claims "that particular contract language chosen by the defendants was ... misleading or deceptive."  (Doc. 156).

On November 19, 2008, the court allowed the plaintiff to amend her complaint for the sixth time to add a claim for breach of contract concerning another fee - the Regulatory Cost Recovery Fee ("RCRF").  (Doc. 160).  Specifically, the plaintiff alleges that the defendant breached the contract in one or more of the following ways:

(a)     charging and collecting a regulatory cost recovery fee to defray costs associated with payment of fees in compliance with various initiatives imposed by government which were not allowed to be recovered under the customer contracts;

(b)     in contracts wherein a regulatory cost recovery fee was recoverable, imposed and recovered, the regulatory cost recovery fee in excess of $1.25 from the contracts did not permit recovery of the total cost recovery fee in excess of $1.25;

    (c)      recovering amounts as regulatory cost recovery fees that were in excess of the cost recovery expenses incurred or for costs unrelated to those initiatives identified in customer contracts as constituting the sources of he regulatory cost recovery fees; and

    (d)      receiving an economic benefit above the amount of the regulatory cost recovery fee imposed.

(Doc. 160 at ¶ 43).  The court then afforded the parties additional time for discovery.  (Docket Entry Dated March 19, 2009).

The defendant has now filed its second motion for summary judgment on the plaintiff's remaining state law and Communications Act claims concerning the USF charge, as well as her new claim for breach of contract concerning the RCRF.  (Doc. 169).  At the outset, the court notes that the plaintiff does not oppose the defendant's motion for summary judgment as to all remaining claims related to the USF (doc. 191 at 3 of 18)[2], but instead only opposes the defendant's motion as it concerns the new RCRF claim.  Therefore, summary judgment is due to be granted as to all of the plaintiff's claims that remained after the court's Memorandum Opinion of April 21, 2008.  The merits of the remaining claims will be addressed below.

## STATEMENT OF FACTS[3]

The plaintiff entered into a contract with the defendant for cellular telephone service in 1995.  (Doc. 156 at 7 of 61).  The contract provided that the company could revise or adjust "rates, terms, and conditions [of the contract] upon at least 30 days' [sic] written notice...."  (*Id.* at 8 of 61).  The plaintiff was a month-to-month customer and she could cancel the contract at

---

[2]References herein to "Doc. ___ at ___ of ___" are references to the electronic page numbers assigned by the Clerk of the Court and not the page references at the bottom of the document.

[3]The facts set out below are the relevant facts for adjudication of the plaintiff's RCRF claim only.  As noted above, the full version of the facts is located at Document 156, pages 7-25.

any time on 15 days' notice.  (*Id*.)

In 2003, AT&T began charging customers the RCRF.  According to AT&T, and not disputed by the plaintiff, the RCRF is a charge to compensate AT&T for the costs of regulatory compliance.  (Doc. 191 at ¶ and 191-1 at 2).  Customers were informed of the fee via a notice in their bill.  It also is undisputed that the plaintiff received notice in her March 7, 2003 bill.  (Doc. 172-15 (Ex. 15)).  Specifically, the notice read:

### Regulatory Cost Recovery Charge

> Beginning with your April bill, CIngular will impose a variable monthly Regulatory Cost Recovery Fee between $.32 and $1.25 to help defray costs incurred in complying with obligations and charges imposed by State and Federal telecom regulation, including the Telecommunications Relay Service Fund, wireless number pooling and portability, Enhanced 911 services, and the federal regulatory fee.  Costs may be incurred and charged prior to initiation of any of the respective services.  To learn more, log on to www.cingular.com/reg or call 1-866-246-4852.

(Doc. 172-15 at 5 of 56).  The plaintiff was billed 13 cents for the period from March 8, 2007 through April 7, 2007.  (*Id*. at 4 of 56).  Additionally, all of the plaintiff's bills, which she paid, after the March 2003 notice contained a separate line item for the RCRF.  (*See e.g.* Doc. 172-13 at 4 of 61).  On contracts made after institution of the RCRF, there is language notifying customers of the RCRF.  (Doc. 191-1 at 2).  Specifically, those contracts state:

> REGULATORY COST RECOVERY FEE - Cingular also imposes the following charges: a Regulatory Cost Recovery Fee of up to $1.25 to help defray its costs incurred in complying with obligations and charges imposed by State and Federal telecom regulations, a gross receipts surcharge, and State and Federal Universal Service Charges.  The Cost Recovery Fee is not a tax or a government required charge.

(*Id*.)

4

# SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.' "*Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir.2007) (per curiam ) (citation to former rule omitted); FED. R. CIV. P.56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[4]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [-now dispute-] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322–24.  "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  A judge's guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party

---

[4]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." FED. R. CIV. P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word-genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id.* " 'Shall' is also restored to express the direction to grant summary judgment." *Id.*  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

must prevail as a matter of law." *Allen v. Tyson Foods, Inc*., 121 F.3d 642, 646 (11th Cir. 1997)

(quoting *Anderson*, 477 U.S. at 259).  However, the nonmoving party "must do more than simply

show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*

*v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).  If the evidence is merely colorable, or is not

significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249; *accord*

*Spence v. Zimmerman*, 873 F. 2d 256 (11th Cir. 1989).  Furthermore, the court must "view the

evidence presented through the prism of the substantive evidentiary burden" so there must be

sufficient evidence on which the jury could reasonably find for the plaintiff. *Cottle v. Storer*

*Communication, Inc*., 849 F.2d 570, 575 (11th Cir. 1988) (quoting *Anderson*, 477 U.S. at 254).

Nevertheless, credibility determinations, the weighing of evidence of the nonmovant is to be

believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255.

The nonmovant need not be given the benefit of every inference but only of every reasonable

inference. *Brown v. Clewiston*, 848 F.2d 1534, 1540 n. 12 (11th Cir. 1988).  "If reasonable

minds could differ on the inferences arising from undisputed facts, then a court should deny

summary judgment." *Allen*, 121 F. 3d at 643.

## DISCUSSION

According to the plaintiff, "[t]he central question to be answered is whether AT&T was

allowed[,] by the terms and conditions of the contract it unilaterally created and forced plaintiff

to sign as a condition of service, to bill [the] plaintiff for the elements of the RCRF as AT&T

specifically defined them."  (Doc. 191 at 7).  While the plaintiff does not dispute that AT&T had

a contractual right to raise or modify the "rates, terms and conditions" of the contract, to charge

the plaintiff for all services offered by the company, and even to charge the plaintiff for all taxes

6

and fees imposed by any governmental authority, she does dispute that the assessment of the RCRF is encompassed within any of those rights.  Specifically, the plaintiff asserts that the original contract does not allow AT&T to charge its customers a fee for the cost of complying with governmental regulations and mandates, and although AT&T could have unilaterally changed the "terms and conditions" of the contract, it never did so.  (Doc. 191 at 4-5).  Because the "terms and conditions" were not changed, the plaintiff argues, AT&T's basis for imposing the RCRF must have been found in the original contract for AT&T to be in compliance with the contract.  Because it is not, the plaintiff argues that the defendant's imposition of the RCRF amounts to a breach of contract.  (*Id*. at 7-10).

The defendant argues that the plaintiff's claims are due to be dismissed because imposition of the RCRF was contractually permissible both as a revision and adjustment to the rates, terms, and conditions under paragraphs 1 and 21 of the 1995 contract and as a cost of government compliance under paragraph 8(b) of the contract.  (Doc. 192 at 4-6).  Additionally, the defendant argues, the plaintiff agreed to the RCRF by paying the charges every month even though she could have canceled the contract at any time.  (*Id*. at 10-11).

### Defining "Rates, Terms and Conditions"

As stated previously, the plaintiff does not dispute that the contract allowed AT&T to revise and adjust the rates, terms and conditions of the contract at any time upon 30 days notice. She does, however, argue that AT&T did not under the present circumstances "change the terms and conditions" of the contract as argued by the defendant.  The court disagrees with the plaintiff.

As set out previously, paragraphs 1 and 21 of the plaintiff's original contract allowed the defendant to revise and adjust the rates, terms and conditions of the plaintiff's contract at any

7

point upon 30 days notice to the plaintiff.  AT&T advised the plaintiff that it would begin

collecting the RCRF, which would "help defray costs it incurred in complying with obligations

and charges imposed by State and Federal telecom regulation, including the Telecommunications

Relay Service Fund, wireless number pooling and portability, Enhanced 911 services, and the

federal regulatory fee."  (Doc. 172-15 at 5 of 56).  In no uncertain terms, the plaintiff was on

notice she would be assessed a new charge on her upcoming wireless telephone bills that would

be itemized on the bill as an RCRF.  Within that notice, the defendant set out the name of the fee,

when it would begin, what it was for, how much it would be, and how often it would be charged.

(*Id*.)  The court is not persuaded by the plaintiff's argument that such a notice was not sufficient

to revise or adjust a rate, term or condition of the plaintiff's contract.  To the contrary, the court

finds as a matter of law that the notice was adequate.

The defendant further argues that the plaintiff agreed to the charge because she was free

to terminate her contract at any time.  (Doc. 184 at 42 of 53).  In support of this contention,

AT&T cites *SouthTrust Bank, N.A. v. Williams*, 775 So. 2d 184 (Ala. 2000) (holding that

plaintiff's continued use of his at-will checking account following the notification of an added

arbitration provision constituted assent tot he change in the contract terms) *Melson v. Cook*, 545

So. 2d 790 (Ala. Civ. App. 1989) (stating that notice of further rate increase in month-to-month

lease changed lease rate on effective date stated in notice); *Summers v. Palston Purina Co.*, 260

Ala. 166(Ala. 1954) (upholding change at-will employment contract terms based on employee's

assent to terms by continuing to work); *Hill v. Gateway 2000, Inc*., 105 F.3d 1147 (7th Cir. 1997)

(holding that arbitration clause, which was included with product mailed to the customer and

with the proviso that the customer could return the product within thirty days, was binding on the

customer who did not return the computer).  (*Id*. at 41-42 of 53).  The plaintiff retorts that these cases are distinguishable.  (Doc. 191 at 12-16 of 18).

Upon consideration of the applicable law and facts, the court finds that the plaintiff's continued use of cellular service and repeated payment of her cellular bill amounts to an acknowledgment of and assent to the adjustment or revision in her contract.  Because she was an at-will customer who could cancel her contract at any time with 15 days notice, her continued payment of her bill constitutes her agreement to pay the fee.  While the plaintiff argues that the cases cited by the defendant are distinguishable, the court is not persuaded.  For instance, in *SouthTrust Bank, N.A. v.  Williams*, the basic tenet to be gleaned is that "[a]mendments to the conditions of unilateral-contract relationships with notice of the changed conditions are not inconsistent with the general law of contracts," and that continuation of an account after notice of a change of conditions in the contract amounts to implicit assent.  *Id*. at 190-91.  The cases may be factually distinguishable, however, they do not obviate the court's holding in this instance.

The plaintiff's argument that the defendant "simply added a new charge" without notice, but did not change the terms and conditions of the underlying contract is not persuasive.  (Doc. 191 at 13 of 18).  The court finds that such a conclusion is counterintuitive.  As cited above, the original agreement allowed the defendant to change "the rates, terms and conditions" of the agreement in its sole discretion with 30 days written notice.  The requisite notice was adequate and was provided to the plaintiff.  Thereafter, she continued paying for service.  She is entitled to no relief on her claims.

### Charges Above $1.25

In her responsive brief, the plaintiff asserts that the defendant in its newer contracts has

notified its customers that the RCRF will be up to $1.25.  She argues that the plain language of the newer agreements limits the collectable sum to that amount.[5]  She further argues that collection of RCRF "over this amount is a breach of the contract, and plaintiff's are [sic] entitled to a refund."  (Doc. 191 at 17 of 18).  The defendant counters that the plaintiff's reliance on the contract of a third party is not sustainable.  (Doc. 192 at 11 of 13 (citing *Dunning v. New England Life Ins. Co.*, 890 So. 2d 92, 97 (Ala. 2003) (noting that "[i]t is well-settled law that 'one not a party to, or in privity with a contract, cannot sue for its breach'") (quoting *Twine v. Liberty Nat'l. Life Ins. Co.*, 311 So. 2d 299, 305)).

The court finds that under the law and evidence, the plaintiff's conclusory assertion that she is entitled to a refund is without merit.  Nothing in the record support such a claim.  First, the plaintiff is not a party to or in privity with the contract submitted in support of the response.  Second, there is no evidence that the defendant overcharged the plaintiff under the relevant agreements.

## CONCLUSION

Premised on the foregoing, the defendant's motion for summary judgment (doc. 169) is due to be granted.  An appropriate order will be entered.

**DONE,** this 3rd day of August, 2011.

*John E. Ott*
_____
**JOHN E. OTT**
United States Magistrate Judge

---

[5]In support of her argument, the plaintiff submitted the service contract of a third party.  (Doc. 191-1 (Ex. 2) at 2 of 2 ).